## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GRAHAM KANE, | : | Case No. 3:15-cv-192 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Graham Kane applied for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on April 10, 2012.  He asserted that after working in food-service industry for twenty-three years, he could no longer work a substantial paid job as of March 23, 2009 due to osteoarthritis, degenerative disc disease, peripheral neuropathy, arthralgias, and left popliteal synovial cyst.  His application, medical records, and other evidence proceeded to a hearing before Administrative Law Judge (ALJ) John S. Pope who later issued a written decision.  The result of his decision was the denial of Plaintiff's application based on his central conclusion that Plaintiff was not under a "disability" as defined in the Social Security Act.  Plaintiff brings the present case challenging ALJ Pope's non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's *pro se* Statement of Errors (Doc. #8),[2] the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Doc. #6), and the record as a whole. Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Pope's non-disability decision.

## II. <u>Background</u>

Plaintiff asserts that he has been under a "disability" since March 23, 2009. He filed his application for benefits on April 10, 2012. He was forty-two years old at the time and was therefore considered a "younger person" under Social Security Regulations. He has a limited education. His significant health problems include osteoarthritis, degenerative disc disease, peripheral neuropathy, arthralgias, and left popliteal synovial cyst.

### A. Plaintiff's Testimony

Plaintiff testified in the hearing before ALJ Pope that he worked in the food-service industry for twenty-three years. (Doc. #6, *PageID* #92). He last worked on March 23, 2009, when he was "laid off." *Id.* at 91. He began looking for a new job but then "realized how bad my legs hurt and how ridiculous it would be for me to try to hold down a job that requires standing." *Id.* at 119. He explained that if a surgery could fix the problems in his legs, then he would have the surgery because he would like to go back to work. *Id.* at 120-21.

---

[2] The Court is construing Plaintiff's *pro se* Notice (Doc. #8) as Plaintiff's Statement of Errors.

Plaintiff testified that doctors are still looking for the cause of his leg pain.  *Id.* at 93.  Thus far, he has been diagnosed with osteoarthritis and a popliteal cyst behind his left knee.  *Id.*  He experiences a "throbbing, continual pain" "[f]or the most part, 24/7." *Id.* at 111.  His pain "runs from the hips to the ankles" in both legs.  *Id.*  Medications help with his pain, but he can "still tell it's there."  *Id.* at 111-12.  Physical activity worsens his pain.  *Id.* at 112.

Plaintiff sees a physician, usually Dr. Scott Shaw, at Schear Family Practice approximately once per month.  *Id.* at 95.  He has an extremely difficult time finding doctors who accept his health insurance.  *Id.* at 96.  As a result, he has not been able to schedule appointments with many specialists.  *Id.*  He attended physical therapy at Wright Health Building approximately twice per week for one month, but he found that it did not help his pain.  *Id.* at 96-97.  He has had some testing done, including an ultrasound and a nerve-conduction study at Good Samaritan.  *Id.* at 98.  He recently began receiving pain medication from a pain-management doctor.  *Id.* at 100.  At the time of the hearing, he was taking Celexa, Ambien, ibuprofen, Vicodin, and tizanidine.  *Id.* at 99-100.

He has also been diagnosed with depression.  *Id.* at 107.  He sees a therapist at Samaritan Behavioral Health once every two weeks.  *Id.* at 108.  Plaintiff testified that he did not think his depression would cause problems with his ability to work.  *Id.*

Plaintiff's addiction to drugs and alcohol is currently in remission.  *Id.* at 115.  He "completely stopped taking all drugs," but he drinks a "pint of, like a cheap bourbon whiskey," every three to four months.  *Id.*  He used to attend Alcoholics Anonymous or

3

Narcotics Anonymous meetings, but he no longer does. *Id.* at 118. Instead, he explained,

"[t]he men's meeting [at church] is good for me. It's just as good as going to an

Alcoholics Anonymous meeting, because it's a spiritual thing to do. It helps me." *Id.*

Plaintiff's typical day starts when he wakes up between one and two in the

afternoon. *Id.* at 101. He usually watches television for a few hours with his mother and

then walks to the library. *Id.* at 102-03. After finding interesting books and movies, he

walks home, prepares dinner for himself and his mother, eats dinner, and cleans the

kitchen. *Id.* at 103-04. He then watches television, reads, and goes to sleep. *Id.* at 104-

05. He is able to walk fifteen to twenty minutes to the grocery store and bring home four

to six bags of groceries. *Id.* at 106. However, he generally has to take a break when he is

walking home. *Id.* He is able to shower with the assistance of a shower chair, dress

himself, do laundry, sweep occasionally, and play disc golf. *Id.* at 105-07. He speaks to

his siblings on a daily basis, but he does not see them often. *Id.* at 109. He attends

church every Sunday. *Id.* at 110. Plaintiff estimated he could lift fifty pounds without

hurting himself. *Id.* at 112. He could walk for a total of between one hour and one and

one-half hours, stand for a total of between one and two hours, and sit for a total of eight

hours (if he could "get up frequently") in an eight-hour period of time. *Id.* at 112-14.

## B.    Medical Opinions

### 1.    Dr. Barbara Bennett

Plaintiff's former family-care physician, Dr. Barbara Bennett, treated him between

January and April 2009. *Id.* at 436-38. Her treatment notes indicate that in April 2009,

he complained of leg pain. *Id.* at 435. Dr. Bennett noted that he cannot stand on his legs

for more than two hours.  *Id.*  On April 2, 2009, x-rays revealed "minimal degenerative change present with some minimal joint space narrowing medially and a tiny superior patellae osteophyte indicating some minimal osteoarthritic changes" in Plaintiff's right knee and "minimal degenerative changes [] present with some minimal spurring of the intercondylar eminences" in his left knee.  *Id.* at 434.

Dr. Bennett completed a "Basic Medical" questionnaire on April 2, 2009.  *Id.* at 438-40.  She listed peripheral neuropathy, osteoarthritis, situational anxiety, and alcoholism as his medical conditions.  *Id.* at 438.  She noted his health status was good/stable with treatment, but she did not provide any further explanation.  *Id.*  She opined he could stand/walk for one hour without interruption and between zero and one hour in an eight-hour workday, and his ability to sit was not affected.  *Id.* at 439.  He could lift between six and ten pounds frequently, was extremely limited in repetitive foot movements, and was markedly limited in bending.  *Id.*  She concluded Plaintiff was "unemployable."  *Id.* at 440.

On April 9, 2009, Dr. Bennett completed an "Ability to Work" questionnaire.  *Id.* at 442.  She noted that on a sustained basis, he could stand/walk for between thirty minutes and two hours, sit for between six and one-half hours and eight hours, and alternately sit or stand for between two and one-half hours and four hours.  *Id.*  He could not use his hands for repetitive pushing and pulling, and he could not use his feet for repetitive operation of foot controls.  *Id.*  She declined to release Plaintiff for part-time or full-time employment.  *Id.*

### 2. Schear Family Practice and Dr. Scott Shaw

Plaintiff began treatment at Schear Family Practice in September 2010. *Id.* at 349. His physician was usually Dr. Scott Shaw, but other doctors also saw him occasionally. Treatment notes indicate Plaintiff first reported leg pain in September 2010. *Id.* Dr. Shaw prescribed him medications for depression and leg pain. *Id.* at 349-51. Their office advised him to wear a knee brace, ordered x-rays, and referred him to specialists. *Id.* at 431. Treatment notes from April 2013 indicated that Plaintiff was frustrated with the lack of progress in resolving his leg pain. *Id.* at 519-20. In May 2013, an MRI of his right knee appeared normal, and an MRI of his left knee showed mild degenerative change and a 2.3 centimeter popliteal cyst. *Id.* at 535-37. Based on those results, Dr. Shaw referred him to an orthopedic surgeon to evaluate the cyst. *Id.* at 568.

Dr. Shaw completed a "Basic Medical" questionnaire on February 14, 2011. *Id.* at 456-57. Dr. Shaw indicated Plaintiff's health status at that time was good/stable with treatment, but he did not elaborate. *Id.* at 456. Dr. Shaw also noted he could stand/walk for thirty minutes without interruption for a total of two hours in an eight-hour workday, and he could sit for two hours without interruption for a total of four hours. *Id.* at 457. He could lift up to five pounds frequently and ten pounds occasionally. *Id.* Dr. Shaw concluded Plaintiff was "unemployable." *Id.*

Dr. Shaw also completed a medical assessment on March 15, 2012. *Id.* at 313-17. Dr. Shaw noted he "has chronic left leg pain. Any activity which causes him to use his left leg excessively will increase his pain." *Id.* at 316. He opined that Plaintiff could lift ten pounds frequently, stand/walk for fifteen minutes at one time for a total of one hour in

6

an eight-hour workday, and sit for thirty minutes at one time for a total of two hours. *Id.*
at 314. He should never climb, balance, stoop, crouch, kneel, or crawl and cannot reach
or push/pull. *Id.* at 315. Dr. Shaw noted, "[i]f [an] MRI can be approved…, perhaps a
diagnosis can be made to explain his pain." *Id.* at 317. He concluded Plaintiff cannot do
sedentary work, light work, or medium work. *Id.*

Dr. Shaw also completed a questionnaire where he indicated he has treated
Plaintiff since September 2010 and last saw him in May 2012. *Id.* at 352-53. Dr. Shaw
described Plaintiff's conditions as "chronic left leg pain; lack of endurance and strength
in legs; dating back to approx. age 37." *Id.* at 352. Dr. Shaw indicated he could sit for
thirty minutes at one time, stand for fifteen minutes at one time, walk for twenty minutes
at one time, lift up to twenty-five pounds, and bend (but would need support to get back
up). *Id.* at 353.

### 3. Dr. Diana Manos and Dr. Abraham Mikalov

Dr. Diane Manos, a non-examining State agency medical consultant, reviewed
Plaintiff's records on May 16, 2012. *Id.* at 130-45. Dr. Manos opined that he could lift
and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for
six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. *Id.* at
140. He was limited from pushing or pulling with his left-lower extremity. *Id.* He could
occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and he
could never climb ladders, ropes, or scaffolds. *Id.* at 141. He should avoid concentrated
exposure to hazards including machinery and heights. *Id.* at 142. She concluded Plaintiff
was not disabled, noting, "[t]hough you have discomfort, the evidence shows you are still

7

able to move about and to use your arms, hands, and legs in a satisfactory manner." *Id.* at

144. On November 15, 2012, another non-examining State agency medical consultant,

Dr. Abraham Mikalov, reviewed Plaintiff's records and agreed with Dr. Manos' findings.

*Id.* at 164-78.

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and

Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

U.S.C. §§ 423(a)(1), 1382(a). The term "disability" – as defined by the Social Security

Act – has specialized meaning of limited scope. It encompasses "any medically

determinable physical or mental impairment" that precludes an applicant from

performing a significant paid job – i.e., "substantial gainful activity," in Social Security

lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines:

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007). Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record

contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard

is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, ALJ Pope evaluated the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

> Step 1:    Plaintiff has not engaged in substantial gainful employment since March 23, 2009.

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Step 2:     He has the severe impairments of osteoarthritis, degenerative disc disease, peripheral neuropathy, arthralgias, and left popliteal synovial cyst.

Step 3:     He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     His residual functional capacity, or the most he could do in a work setting despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work… except the claimant can only occasionally operate foot controls with the left lower extremity.  The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and can never climb ladders, ropes, or scaffolds.  The claimant must avoid even moderate exposure to hazards, including hazardous machinery and heights."

Step 4:     He is unable to perform any of his past relevant work.

Step 5:     He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 48-66).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 66.

## V.     <u>Discussion</u>

Plaintiff contends that a new diagnosis concerning the severe problems with his legs establishes that he is under a "disability."  His *pro se* notice does not raise any further specific errors.  He does concede that his osteoarthritis is "not severe enough to receive disability benefits."  (Doc. #8, *PageID* #613).  However, he originally alleged that he was under a "disability" due to multiple severe conditions.  Based on Plaintiff's allegations, the analysis turns to a review of the ALJ's decision.  *See Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011) (citing *Martin v. Overton,* 391 F.3d 710, 712 (6th Cir. 2004)) ("*Pro se* complaints are to be held 'to less stringent standards than formal

10

pleadings drafted by lawyers,' and should therefore be liberally construed."). *See also Elam v. Barnhart*, 386 F. Supp. 2d 746, 752-53 (E.D. Tex. 2005) (citations and internal quotation marks omitted) ("Courts are not bound to scour the record for every conceivable error, but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized.").

The Commissioner asserts that the ALJ's residual functional capacity finding was supported by substantial evidence and should be upheld.  The Commissioner also argues that Plaintiff waived all claims not raised in his Statement of Errors, and in support of this assertion, the Commissioner cites three cases.  (Doc. #12, *PageID* #625).  In each case, the Sixth Circuit found that the plaintiff waived an argument by not properly including it in their brief on appeal.  *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) (citations omitted) ("Stiltner waived any argument regarding Dr. Odell by not including it in her brief."); *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("Because Dillery wholly fails to address this issue in her appellate brief, we conclude that she has waived her right to appeal the district court's denial of injunctive relief."); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").  Notably, these appellate cases do not address whether a plaintiff waives an argument by not including it in the Statement of

Errors before the District Court.  Thus, the Court is not precluded from reviewing errors

not specifically asserted in Plaintiff's *pro se* Statement of Errors.

### A.    Dr. Shaw's Medical Opinion

The ALJ determined that Dr. Shaw's opinion was entitled to "little weight."

Social Security Regulations recognize several different categories of medical sources:

treating physicians, nontreating yet examining physicians, and nontreating yet record-

reviewing physicians.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir.

2013).

> As a general matter, an opinion from a medical source who has examined a
> claimant is given more weight than that from a source who has not
> performed an examination (a "nonexamining source"), and an opinion from
> a medical source who regularly treats the claimant (a "treating source") is
> afforded more weight than that from a source who has examined the
> claimant but does not have an ongoing treatment relationship (a
> "nontreating source").   In other words, "[t]he regulations provide
> progressively more rigorous tests for weighing opinions as the ties between
> the source of the opinion and the individual become weaker."  Soc. Sec.
> Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Id.* (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (d) (eff. April 1, 2012)).  To effect this

hierarchy, the Regulations adopt the treating physician rule.  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two
> conditions are met:  (1) the opinion is "well-supported by medically
> acceptable clinical and laboratory diagnostic techniques"; and (2) the
> opinion "is not inconsistent with the other substantial evidence in [a
> claimant's] case record."

*Id.* at 376 (citation omitted); *see Gentry*, 741 F.3d at 723.  If both conditions do not exist,

the ALJ "must consider a host of factors, including the length, frequency, nature, and

extent of the treatment relationship; the supportability and consistency of the physician's

conclusions; the specialization of the physician; and any other relevant factors" to

12

determine how much weight is appropriate. *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Although the ALJ acknowledges that Dr. Shaw is Plaintiff's treating physician, he did not explicitly address the treating physician rule. The ALJ ignored the first condition – whether Dr. Shaw's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). The ALJ does briefly address inconsistency. However, it is not clear if he is addressing the second condition under the treating physician rule, whether Dr. Shaw's opinion is "not inconsistent" with other substantial evidence in the case record, or if he is addressing the consistency factor used to determine weight when the treating physician rule does not apply. There is a substantial difference. The Social Security Administration defines "not inconsistent" as "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence)...." SSR 96-2p, 1996 WL 374188 at *3 (1996). In comparison, the Social Security Regulations explain that under the factors, "[g]enerally, the more

13

consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4).  This distinction helps differentiate between the ALJ's first task – deciding whether the treating physician rule applies – and the ALJ's second task – continuing to weigh the treating physician's opinion under the additional factors of treatment relationship, supportability, consistency, and specialization.  The ALJ here blended inconsistency with consistency rather than considering their distinct uses as the Regulations require.  *Compare* 20 C.F.R. § 404.1527(c)(2), *with* 20 C.F.R. § 404.1527(c)(4).

Both Social Security Regulations and case law draw this distinction to emphasize the significance of treating source opinions.  "In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *4.  This is because "treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective 'cannot be obtained from objective medical findings alone.'"  *Gentry*, 741 F.3d at 723 (citations omitted).

Accordingly, the ALJ must determine that a treating source opinion will not be given controlling weight *before* the factors are applied.  *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).  The Sixth Circuit explains,

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (listing seven specific factors to be applied when a

14

> treating-source opinion is not given controlling weight, including the
> general consistency of the opinion with the record as a whole).

*Id*. The ALJ's rejection of Dr. Shaw's opinion without clearly addressing the treating

physician rule and without providing "good reasons" violates the Social Security

Administration's own procedural requirements. 20 C.F.R. § 404.1527(c). "An ALJ's

failure to follow agency rules and regulations denotes a lack of substantial evidence, even

where the conclusion of the ALJ may be justified based upon the record." *Gentry,* 741

F.3d at 722 (citing *Cole,* 661 F.3d at 937; *Blakley,* 581 F.3d at 407) (internal quotation

marks omitted). *See Gayheart,* 710 F.3d at 377 (citing *Wilson,* 348 F.3d at 544) ("The

failure to provide 'good reasons' for not giving Dr. Onady's opinions controlling weight

hinders a meaningful review of whether the ALJ properly applied the treating-physician

rule that is at the heart of this regulation.").

However, even if the ALJ had properly explained his consideration of the treating

physician rule, substantial evidence does not support the ALJ's reasons for concluding

that Dr. Shaw's opinion is only entitled to "little weight." "[I]n all cases there remains a

presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to

great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242

(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *4).

> If the ALJ does not accord controlling weight to a treating physician, the
> ALJ must still determine how much weight is appropriate by considering a
> number of factors, including the length of the treatment relationship and the
> frequency of examination, the nature and extent of the treatment
> relationship, supportability of the opinion, consistency of the opinion with
> the record as a whole, and any specialization of the treating physician.

*Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)).

Although the ALJ addressed some of the factors, he failed to provide "good reasons" as required by the Regulations.

The ALJ asserts that Dr. Shaw's opinions are (1) inconsistent with his own treatment of claimant and (2) inconsistent with the remaining evidence of record. Both statements are notably conclusory, and the ALJ provides no specific examples. Instead, the ALJ cites 7 exhibits, totaling 106 pages. (Doc. #6, *PageID* #63). It is not clear from the ALJ's decision what parts of Dr. Shaw's opinions are inconsistent with his treatment and the record as a whole. Additionally, the ALJ's first assertion that "Dr. Shaw's severely limiting opinions are inconsistent with his own treatment of claimant, which suggests chronic leg, knee and hip pain and gait abnormalities, but otherwise contains evidence of only mild diagnostic findings and noted stability with treatment" is not accurate. Although Dr. Shaw noted in 2011 that Plaintiff's health status was good/stable with treatment, his notes do not demonstrate stability with treatment. Dr. Shaw tried many different methods for helping him cope with the persistent pain. For example, the notes indicate that Dr. Shaw prescribed him Relafen and Tylenol with Codeine No. 3. *Id.* at 576-77. Despite this medication, Plaintiff's pain continued to increase to the point where Dr. Shaw then referred him to the pain-management clinic. *Id.* at 572-73. Dr. Shaw noted that he has "limited improvement" with medicine. *Id.* at 535. Similarly, Plaintiff explained that the medications help with the pain, but they do not eliminate his pain entirely. *Id.* at 111-12. Dr. Shaw's treatment notes also indicate Plaintiff attempted to attend physical therapy, but it provided no relief. *Id.* at 478. Dr. Shaw also

16

recommended he wear a brace and referred him to an orthopedic surgeon. *Id.* at 431, 568.

Unfortunately, Plaintiff's health insurance limited his ability to obtain additional treatment. As noted by Dr. Shaw, Plaintiff had considerable difficulty locating specialists who accepted his health insurance. *Id.* at 317, 576. For example, he attempted to locate a physician who could perform surgery on the popliteal cyst behind his left knee, but he could not find a surgeon who accepted his health insurance. *Id.* at 97-98. Dr. Shaw referred him to an orthopedic specialist, but he felt the doctor was rude and did not go back. *Id.* at 97. Dr. Shaw ordered an MRI in February 2013, but it was not approved by Plaintiff's insurance. *Id.* at 576.

The ALJ's second assertion that Dr. Shaw's "opinions are inconsistent with the remaining evidence of record, including recent pain management treatment that contains evidence of chronic knee tenderness and gait abnormalities, and occasional spinal tenderness, mildly reduced range of motion, and straight leg raising, but otherwise normal upper and lower extremity range of motion and strength" is not supported by substantial evidence. *Id.* at 63 (citing Exhibit B21F). The ALJ does not identify specific information from Dayton Pain Management that is inconsistent with Dr. Shaw's opinions. And, the ALJ either overlooked or ignored several findings from Dr. Robert Windsor at Dayton Pain Management that are consistent with Dr. Shaw's opinions. For example, Dr. Windsor concluded, "Lumbar radiculopathy can be objectively confirmed with lateral bending radiographic studies. Proprioceptive disruption causes the spinous processes above and below an affected nerve root to rotate away from the side of lateral

17

bending, which is contrary to normal motion toward the side of lateral bending." *Id.* at 579. Additionally, a sensory conduction study revealed very severe (+5) pathology in Plaintiff's left peroneal nerve and right sural nerve. *Id.* Based on their findings, they prescribed him Mobic, Zanaflex, and hydrocodone-acetaminophen. *Id.* at 594.

Additionally, the ALJ does not acknowledge that Dr. Shaw's opinions are generally consistent with Dr. Bennett's opinions. Both agree that Plaintiff is not able to work. *Id.* at 317, 439, 442, 457. This is particularly notable because their opinions were given approximately three years apart. They also agree that he can lift up to ten pounds frequently, his ability to stand and walk are affected by his conditions, and he can only stand and walk for a maximum of two hours in an eight-hour day. *Id.* at 314, 439, 457. Further, the ALJ also does not recognize that Dr. Shaw's opinions are consistent with Plaintiff's testimony. Both Dr. Shaw and Plaintiff estimated that he can walk/stand for two hours or less, and he can sit for less than four hours in an eight-hour time period. *Id.* at 112-14, 314, 457. Dr. Shaw also indicated that activities that cause him to use his left leg will increase his pain, and Plaintiff testified that physical activity increases his pain. *Id.* at 112, 316.

Finally, although the ALJ criticizes Dr. Shaw's opinion, the ALJ fails to criticize Dr. Manos' and Dr. Mikalov's opinions. "[T]he regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite." *Gayheart,* 710 F.3d at 379-80. For example, Dr. Manos and Dr. Mikalov state that Plaintiff can stand/walk for approximately six hours in an eight-hour day. (Doc. #6, *PageID* #s 140, 174). But Dr.

Shaw and Dr. Bennett agree that Plaintiff cannot stand/walk for more than two hours in an eight-hour day. *Id.* at 439, 442, 314, 457. Dr. Manos and Dr. Mikalov indicate he can sit for six hours. *Id.* at 174, 140. In comparison, Dr. Shaw estimates that Plaintiff can sit for two hours total in an eight-hour workday. *Id.* at 314. Dr. Manos and Dr. Mikalov found he can occasionally climb, balance, stoop, crouch, kneel, and crawl, except he can never climb ladders, ropes, and scaffolds. *Id.* at 141, 174-75. Dr. Shaw determined that Plaintiff can never do any of those activities. *Id.* at 315. Similarly, the ALJ also fails to acknowledge that Dr. Manos and Dr. Mikalov did not examine all of Plaintiff's medical records. Specifically, both Dr. Manos and Dr. Mikalov completed their assessments prior to Plaintiff attending treatment at Dayton Pain Management. *Id.* at 145, 174.

To the ALJ's credit, he accurately observed that Dr. Shaw had "an extensive treating relationship" with Plaintiff. *Id.* at 63. However, he does not include the extent of that relationship, specifically, that he began treatment with Schear Family Practice in 2010 and that he saw a physician almost every month from April 2012 to at least June 2013. *Id.* at 307, 313-17, 320-53. The ALJ also correctly notes that Dr. Shaw's opinions are generally consistent with each other. *Id.* at 62-63.

The ALJ also asserts that "the determination that an individual is unable to work is an opinion on an issue reserved to the Commissioner of Social Security." *Id.* at 63 (citing SSR 96-5p). Although treating source opinions on issues reserved to the Commissioner are not entitled to controlling weight or special significance, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5p, 1996

19

WL 374183 at *2-3 (1996). In evaluating a similar statement by an ALJ, the Seventh

Circuit emphasized,

> The pertinent regulation says that "a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that you are disabled." 20 C.F.R. § 404.1527(e)(1). That's not the same thing as saying such a statement is improper and therefore to be ignored, as is further made clear when the regulation goes on to state that "the *final* responsibility for deciding" residual functional capacity (ability to work—and so whether the applicant is disabled) "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). And "we will not give any *special* significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(3).

*Bjornson v. Astrue,* 671 F.3d 640, 647-48 (7th Cir. 2012) (emphasis in original). Thus,

the fact that Dr. Shaw provided his opinion about Plaintiff's inability to work does not

properly serve as a ground for placing little weight on Dr. Shaw's opinion.

For these reasons, substantial evidence does not support the ALJ's determination

that Dr. Shaw's opinion is only entitled to "little weight."

## B. New Evidence

Plaintiff asserts that his case should not be "throw[n] out" because he found the

cause of the problems in his legs. (Doc. #8, *PageID* #s 613-14). A court can "remand

the case for further administrative proceedings in light of the new evidence, if a claimant

shows that the evidence is new and material, and that there was good cause for not

presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148

(6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability

20

claim if presented with the new evidence." *Sizemore v. Sec'y of Health &
Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). A claimant shows "good
cause" by demonstrating a reasonable justification for the failure to acquire
and present the evidence for inclusion in the hearing before the ALJ. *Willis
v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam).
As noted above, the burden of showing that a remand is appropriate is on
the claimant. *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966
(6th Cir.1986).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Plaintiff alleges in his Statement of Errors that he saw Dr. Suraj Rajan at the

Clinical Neuroscience Institute at Miami Valley Hospital, and "Dr. Rajan is quite certain

I have this disease [spastic paraparesis]. (Doc. #8, *PageID* #s 613-14). Plaintiff further

explains,

> I have all the symptoms that relate to this disease. As of right now I'm
> having a little trouble [] with Care Source on getting the genetic testing
> done. I just need some time to get through the red tape with Care Source. I
> have diligently fought for seven years to find out what is wrong with my
> legs. It would be wrong to throw out my case because I am very disabled
> and [can] no longer work to support myself.

*Id*. at 614. However, he did not include any medical records from Dr. Rajan to support

his claim.

Even if it could be established that Plaintiff's difficulty finding specialists who

accept his insurance constitutes "good cause," Plaintiff has not demonstrated that the new

diagnosis evidence is material. He did not provide any evidence in support of his

statement that Dr. Rajan is "quite certain" of the new diagnosis. Given this lack of

evidence, he did not establish that there was "a reasonable probability that the Secretary

would have reached a different disposition of the disability claim if presented with the

new evidence." *Sizemore,* 865 F.2d at 711.

## C.  Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is weak.  However, Plaintiff is entitled to an Order remanding

this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Graham Kane was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.


Date:  July 29, 2016                              *s/Sharon L. Ovington*
                                                  Sharon L. Ovington
                                                  Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).